UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RUBY RODRIGUEZ,

 Plaintiff,

  v.              Case No. 16-CV-130

MILWAUKEE COUNTY,
SONIA PORTER and
WISCONSIN COUNTY MUTUAL
INSURANCE COMPANY

 Defendants.

---

### DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

 Ruby Rodriguez brings this lawsuit against Milwaukee County, Officer Sonia Porter, and Wisconsin County Mutual, pursuant to 42 U.S.C. § 1983, alleging that her arrest and detention was an unreasonable seizure in violation of the Fourth Amendment and a deprivation of liberty without Due Process in violation of the Fifth Amendment. Defendants move for summary judgment on both of Rodriguez's claims. For the reasons explained below, the motion will be granted.

### UNDISPUTED FACTS

 On June 25, 2015, Rodriguez arrived at Milwaukee County Jail to post bond for her son. (Compl. ¶ 7, Docket # 1-1.) Rodriguez brought with her $2,906.97 in cash and a $10,000 cashier's check payable to the Milwaukee County Sheriff's office. (*Id*.) As part of standard procedure, Milwaukee County Jail checks the identification and runs a warrant search on anyone posting bail for an inmate. (Def.'s Proposed Findings of Fact ("DPFOF")

¶ 4, Docket # 20 and Plaintiff's Response ("Pl.'s Resp.") ¶ 4, Docket # 26.) At approximately 3:55 p.m., a Milwaukee County employee ran a warrant search for Rodriguez. (DPFOF ¶ 8 and Pl.'s Resp. ¶ 8.) The search identified a Commitment Order for Rodriguez. (DPFOF ¶ 9 and Pl.'s Resp. ¶ 9.) The Order was verified and confirmed as being active with the City of Franklin Police Department. (DPFOF ¶ 12 and Pl.'s Resp. ¶ 12.) The Commitment Order, which was signed by Municipal Judge, Frederick F. Klimer, states as follows:

> Defendant: Ruby M Rodriguez
> Ordinance/Statute No.: 183-55/946.41(1)
> Violation: Resist or Obstruct An Officer
> Amount including costs: $439.00
> Citation: 05302295
> Incident: 14-000156
>
> AND, WHEREAS, the said above-named person is in default of payment thereof;
>
> THEREFORE, you are commended to take the body of said above-named person and convey and deliver him/her to the Inspector of the House of Corrections of Milwaukee County and the said Inspector is hereby commanded to receive and keep in custody in said House of Correction the above-named person for the term of 9 days, consecutive, unless said judgment together with all costs and fees are sooner paid or he/she be discharged by the due course of law.

(DPFOF ¶ 13 and Pl.'s Resp. ¶ 13.) After confirming that the Order was active, Officer Porter informed Rodriguez of the Commitment Order and placed Rodriguez in handcuffs at approximately 3:59 p.m. (DPFOF ¶ 16 and Pl.'s Resp. ¶ 16.) Officer Porter then booked Rodriguez into jail. (DPFOF ¶ 17 and Pl.'s Resp. ¶ 17.)

At approximately 9:04 p.m, Rodriguez was photographed and entered into the database by the Milwaukee County Jail staff. (DPFOF ¶ 24 and Pl.'s Resp. ¶ 24.) Approximately fifteen minutes later, Rodriguez's fingerprints were taken and entered into

the Jail database. (DPFOF ¶ 25 and Pl.'s Resp. ¶ 25.) Though the exact timing is unclear, at some point, Rodriguez made a request for "self-bail." (DPFOF ¶ 26 and Pl.'s Resp. ¶ 26.) A packet known as the "arrests detention report packet" (or "ADR packet") is prepared for each inmate and follows each inmate "throughout the booking process and into the release process." (DPFOF ¶ 28 and Pl.'s Resp. ¶ 28.) All information from an ADR packet must be completed and reviewed before an inmate is released. (DPFOF ¶ 29 and Pl.'s Resp. ¶ 29.) At 3:00 A.M on June 26, 2015, Rodriguez's fingerprints were confirmed as correct. (DPFOF ¶ 32 and Pl.'s Resp. ¶ 32.)

At approximately 4:59 a.m., Officer John Brock reviewed Rodriguez's ADR packet. (DPFOF ¶ 33 and Pl.'s Resp. ¶ 33.) At approximately 5:10 a.m., Supervisor Scott Sobek and a second officer reviewed Rodriguez's ADR packet and approved her release. (DPFOF ¶ 35 and Pl.'s Resp. ¶ 35.) Next, a Milwaukee County Jail employee processed Rodriguez's self-bail request and withdrew $474 from Rodriguez's inmate account. (DPFOF ¶ 36 and Pl.'s Resp. ¶ 36.) At approximately 5:43 a.m., Rodriguez was released and given twenty-five dollars in cash. (DPFOF ¶ 37 and Pl.'s Resp. ¶ 37.) On July 8, 2015, Milwaukee County Jail issued a check to Rodriguez for $12,407.97. (DPFOF ¶ 39 and Pl.'s Resp. ¶ 39.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A

3

dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc.,Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Rodriguez's claims are brought under 42 U.S.C. § 1983. She alleges that her arrest and detention violated the Fourth Amendment. Rodriguez also alleges that she was deprived of liberty without Due Process in violation of the Fifth Amendment. Defendants move for summary judgment on the grounds that: (1) Rodriguez cannot show the existence of an unconstitutional policy, practice, or custom; (2) Rodriguez's seizure was based on a valid Commitment Order; and (3) Officer Porter is protected from suit in her individual capacity by qualified immunity. I will address each issue in turn.

4

### 1. Monell Claim Against Milwaukee County

I begin with Rodriguez's claims against Milwaukee County. In *Monell v. Dept't of Soc. Servs. Of City of New York*, the Supreme Court held that local government entities, such as municipalities and counties, cannot be held vicariously liable for constitutional violations committed by their employees. 436 U.S. 658, 690 (1978). However, a municipality can be liable under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Id*. To establish liability under *Monell*, a plaintiff must "show the existence of a policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation." *Jones v. City of Chicago*, 787 F.2d 200, 203 (7th Cir. 1986) (citing *Monell*, 436 U.S. at 690-694). The Seventh Circuit has explained that unconstitutional policies or customs can take the following three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003) (citing *Garrison v. Burke*, 165 F.3d 565, 571-572 (7th Cir. 1999)).

A plaintiff must show that the municipal policy or practice was the "direct cause" or "moving force" behind the constitutional violation. *Minx v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (internal citation omitted). This can be demonstrated one of two ways: (1) a plaintiff may show that the policy itself is unconstitutional; or (2) a plaintiff can establish *Monell* liability by "showing a series of bad acts and inviting the court to infer from them the policymaking level of government was bound to have noticed what was going on and by

failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officials." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995).

Here, Rodriguez has not raised a genuine issue of material fact as to the existence of a policy or custom, which was itself unconstitutional. Rodriguez argues that the arrest by Officer Porter and the procedures that followed were in accordance with the "Sheriff's Department policy, procedure and custom" and Rodriguez's "arrest and detention met Sheriff's Department standards." (Plaintiff's Br. in Opp. to Summ. Judg. ("Pl.'s Br.") at 6, Docket # 25.) Rodriguez cites to Supervisor Sobek's testimony stating that nothing about the arrest conflicted with the Sheriff's Department's policy. (*Id.*) (citing Supervisor Sobek Deposition at 22). Additionally, Rodriguez points to Officer Porter's testimony that her actions "were consistent with Milwaukee Sheriff's Department practice, policy and custom." (*Id.*) (citing Officer Porter's deposition at 48). However, this is not sufficient to survive summary judgment. There is no dispute that these employees were acting in accordance with Milwaukee County policy and procedure. The issue is whether Rodriguez has shown the existence of an unconstitutional policy or custom.

Is Rodriguez challenging the practice of running warrant checks on people who post cash bail? Is Rodriguez challenging the practice of taking people with active warrants or arrests orders into custody? Is Rodriquez challenging the procedure for processing people once they are in custody? Rodriguez is not clear. More importantly, Rodriguez fails to cite to facts in the record that show a genuine dispute regarding the constitutionality of whichever policy or procedure she is challenging.

6

Case 2:16-cv-00130-NJ    Filed 02/05/18    Page 6 of 11    Document 31

At the summary judgment stage, boilerplate allegations will not do. Asserting that a constitutional violation occurred (the arrest and detention) and stating that it was in accordance with a municipal policy is wholly conclusory and is precisely the form of argument that has been repeatedly rejected by the Seventh Circuit and district courts within the Seventh Circuit. *See, e.g.*, *Sivard v. Pulaski County*, 17 F.3d 185, 189 (7th Cir. 1994) ("[Plaintiff] has continued to rest upon mere conclusory allegations concerning the existence of a municipal policy without any factual support."); *Hossman v. Blunk*, 784 F.2d 793, 797 (7th Cir. 1986) ("It is also true that boilerplate allegations of municipal policy or custom, without any factual allegations to support the general allegations, does not make out a § 1983 claim against a municipality."); *Carr v. City of Chicago*, No. 85-C-7610, 1989 WL 81835 (N.D. Ill July 13, 1989) ("The absence of any factual support that a city policy exists mandates that the City be granted summary judgment . . . ."). Thus, even if Rodriguez sufficiently alleged the existence of an unconstitutional policy, her claim fails because she has not produced evidence of an unconstitutional policy or custom by merely pointing to a supervisor's approval of the procedures that occurred.

Rodriguez's *Monell* claim also fails under the "series of bad acts" method. When the "series of bad acts" method is used, "proof of a single act of misconduct will not suffice; for it is the series that lays the premise of the system of inference." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995) (internal citation omitted). In this case, Rodriguez's claim rests on a single incident of alleged unconstitutional conduct (her arrest and detention). This is insufficient to establish *Monell* liability because there is no "series of bad acts" to which a rational jury could infer that a policy maker was aware and condoned the unconstitutional acts of subordinate officials. *Id*.

7

Rodriguez also argues that because Officer Porter is not a police officer, "[t]he actions permitted under Milwaukee Sheriff's Department policy, procedure and custom included an arrest by a jail employee who has no arrest powers." (Pl.'s Br. at 6.) This is also insufficient to show an unconstitutional policy or custom. Even if Rodriguez was able to show that Rodriguez's arrest was unconstitutional—which, for the reasons explained below, she cannot—proving a single incident of Constitutional deprivation without evidence that it was caused by an existing unconstitutional policy is not enough to establish *Monell* liability. *Rodgers*, 771 F.2d at 202. Rodriguez has not identified or described any type of express policy or widespread custom of the municipality and has not provided factual support to overcome summary judgment.

Accordingly, Rodriguez has not met the burden of establishing a genuine issue of material fact in regards to the existence of an unconstitutional policy, custom, or practice. Therefore, defendants' motion for summary judgment as to Milwaukee County is granted.

    2.    *Claims Against Officer Porter*

Rodriguez also brings individual liability claims against Officer Porter. To establish her § 1983 claim, Rodriguez must show that Officer Porter acted under color of state law and deprived her of a constitutional right. *Colbert v. City of Chi.*, 851 F.3d 649, 656 (7th Cir. 2017). Rodriguez asserts that Officer Porter violated her Fourth Amendment rights and her Due Process rights.

8

### 2.1 Fourth Amendment Claim

Rodriguez argues that although she offered to make payment immediately after being notified of the Commitment Order, (Compl. ¶ 10), Officer Porter seized Rodriguez and arrested her, (Compl. ¶ 11). Rodriguez asserts that under the terms of the Commitment Order, "Ms. Porter should have allowed Ms. Rodriguez to make that payment and to let her go." (*Id.*) Rodriguez argues that her arrest under these circumstances violated the Fourth Amendment.

*Doe v. Sheriff of DuPage County*, 128 F.3d 586, 588 (7th Cir. 1997) is instructive here. In *Doe v. Sheriff of Dupage County*, a judge issued a bench warrant for the plaintiff's arrest after she missed her court date. 128 F.3d at 587. After learning of the warrant, the plaintiff turned herself in at the DuPage County Jail. *Id*. She was then detained and booked and was allowed to post bail only after processing which included fingerprinting, photographing, and a brief medical exam. *Id*.

She then sued the county sheriff pursuant to 42 U.S.C. § 1983 for unreasonable seizure in violation of the Fourth Amendment. *Id*. The Seventh Circuit found that the warrant for her arrest legitimized her detention once she arrived at the county jail despite her being able to post bail immediately. *Id*. at 588. Moreover, the Court explained that although she voluntarily showed up at the county jail and was ready to make an immediate bond payment, "[the plaintiff] does not enjoy greater rights under the Fourth Amendment than would another arrestee seized with probable cause, for the Sheriff is not constitutionally compelled to treat folks differently based on how they fall into his custody." *Id*.

As in *Doe v. Sheriff of Dupage County*, Rodriguez's arrest was based on a valid court order. That in itself was sufficient legal authority to take her into custody despite her ability to post bail immediately. Furthermore, as explained in *Doe v. Sheriff of DuPage County*, the fact that Rodriguez voluntarily appeared at the Milwaukee County Jail, albeit to post bail for someone else, does not change its arrest procedures pursuant to the Fourth Amendment. *See* 128 F.3d at 588. Regardless of whether it was discovered upon her arriving at the Milwaukee County Jail or upon being pulled over for speeding, neither the Fourth Amendment nor § 1983 prohibits an arrest in accordance with a valid Commitment Order.

Rodriguez argues that because the Commitment Order was civil in nature and not criminal, it was Rodriguez's choice to either make the payment or go to jail. (Pl.'s Br. at 2.) Rodriguez cites to no legal authority for making a distinction between a civil order and a warrant. Additionally, Rodriguez does not argue that the Commitment Order was expired or invalid. Nor does she argue that the municipal judge did not have the authority to issue the order to take her into custody. Indeed, all courts in Wisconsin have the inherent power to take actions to enforce their orders. Municipal courts are no exception. *See Haas v. Wisconsin*, 241 F. Supp. 2d 922, 931-932 (E.D. Wis. 2003). Accordingly, I find that there was no Constitutional violation upon Rodriguez's arrest by Officer Porter and thus Porter is entitled to summary judgment.

### 2.2 Due Process Claim

Finally, Rodriguez suggests that her Due Process rights were violated by Porter. Rodriguez asserts that "Ms. Porter and her colleagues held Ms. Rodriguez at the jail for over 13 hours." (Compl. ¶ 12.) Liability under § 1983 "is premised on the wrongdoer's personal responsibility," *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012). Thus, "[a]n

individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf–Lillie v. Sondquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). As such, for Rodriguez to prevail against Porter, she must prove that Porter's own actions violated her Due Process rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Defendants assert, and Rodriguez does not contest, that Porter had no involvement in any decision or procedures subsequent to Rodriguez's arrest. (DPOF ¶¶ 23-26 and Pl.'s Resp. ¶ 23-26.) Accordingly, the thirteen hours Rodriguez spent in jail being photographed, fingerprinted, and finishing the self-bail request, cannot be attributed to Porter. Therefore, Rodriguez has not shown a genuine issue of material of fact in regards to her Due Process claim against Porter.

Because I find that Rodriguez's claims against Porter fail, I need not address Porter's qualified immunity argument.

For the reasons explained above, defendants' motion for summary judgment is granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment (Docket # 19 ) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 5th day of February, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge